UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SANU MILLARD, et al.<br><br>On behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br> v.<br><br>GOVERNMENT OF THE DISTRICT OF COLUMBIA,<br><br>Defendant. | Civil Action No.: **22-02672 (CKK)** |

**Notice of Supplemental Authority**

In its Renewed Motion to Dismiss [ECF No. 46] ("Motion") the District made arguments which it characterized as standing arguments, but which are really merits arguments dressed up in standing arguments clothing. The District conflates the jurisdictional issues with the merits issues, and then the District asks the Court to decide the merits issues before deciding the standing issues. Motion, ECF p. 19-22. Thus, the District asks the Court to decide the merits of Plaintiffs' claims before deciding the jurisdictional issues it raises which is "doctrinally quite unsound." *Tanner-Brown v. Haaland*, 105 F.4th 437, 445 (2024).

As the Court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," and given the significance of the

supplemental information with respect to the threshold issue of standing in this matter presented in this Notice of Supplemental Authority, it is in the interest of justice to consider the Plaintiffs' supplemental information. *Am. Freedom Law Ctr. v. Obama*, 2015 U.S. Dist. LEXIS 196951, at *4 (D.D.C. Jan. 9, 2015).

The District argued that certain Named Plaintiffs lacked standing on their declaratory relief and injunctive relief claims because: (1) the District contends their revocations never became final resulting in the loss of their rights to own and / or carry handguns in public; and / or (2) the District contends Plaintiffs whose registration certificates were denied or revoked lacked standing to challenge denial/ revocation of their CPLs). Motion, ECF p. 19-22.

The standard by which a Court should evaluate a motion to dismiss for lack of standing is that the Court must assume "that the plaintiff will ultimately prevail on their legal theory." *Tanner-Brown*, 105 F.4th at 445. The D.C. Circuit has explained in the context of a constitutional claim that it would be "doctrinally quite unsound" to assess standing "by first extensively analyzing th[e] provision, determining that it does not provide an individual right, and then, and only then, concluding that the plaintiff lacked standing." *Id.* (*quoting Parker v. District of Columbia*, 478 F.3d 370, 376-77 (D.C. Cir. 2007)).

In fact, "[s]uch an approach would amount to "premature judicial involvement" and "substantive adjudication in the absence of a 'case or

controversy,'" *Tanner-Brown*, at 445 (*quoting Jud. Watch, Inc. v. U.S. Senate*, 432 F.3d 359, 364 (D.C. Cir. 2005) (Williams, J., concurring).

For example, in *Tanner-Brown*, Ms. Tanner-Brown alleged that her injury-in-fact was the lack of an accounting regarding property which she alleged was held in a trust by the United States established pursuant to an Act of May 27, 1908, 35 Stat. 312 (the "1908 Act"). *Tanner-Brown*, 105 F.4th at 445. The District Court rejected Ms. Tanner-Brown's alleged injury-in-fact after analyzing Section 6 of the 1908 Act and holding that the Act does not create a trust relationship and that there can be no claim for an accounting in the absence of any duty to furnish one. Id. The D.C. Circuit rejected the District Court's approach and held a court must consider standing separately from the merits by assuming that the plaintiff will ultimately prevail on their legal theory. *Tanner-Brown*, 105 F.4th at 445.

Plaintiffs' legal theory is that the District denied or revoked Plaintiffs' registration certificates or CPLs in violation of the Second Amendment exercising their undeterred, subjective discretion, Am. Compl., ¶¶ 1-5, *passim*, and that the District's registration and licensing requirements constitute a unitary system because obtaining a CPL depends on an applicant's being able to register the pistol the applicant wants a license for, and the District administers its registration and licensing requirements constitute as a unitary system. Id. ¶¶ 33-37. Plaintiffs separately alleged that "requiring registration of all handguns is not consistent with

this Nation's historical tradition of firearm regulation." ¶ 260. Obviously conditioning CPLs on requiring the applicant/ holder to have an unconstitutional registration certificate unconstitutionally burdens the Second Amendment right to carry a handgun in public for self-defense.

For Plaintiffs' injunctive and declaratory relief claims the injury in fact Plaintiffs clients suffered from the unconstitutional statutes was having them applied against them in denials or revocation proceedings, even if some Plaintiffs ultimately prevailed in the application process and revocation proceedings. Plaintiffs addressed the District's mootness arguments in the Opposition [ECF No. 51] to the District's Renewed Motion to Dismiss.

Therefore, the Court should assume this legal theory will prevail when deciding the District's standing arguments and accept Plaintiffs' plausibly pled injury-in-fact.

But, instead, the District recasts the Plaintiffs' allegations based on the administrative record (which the court can take notice of without converting the motion to a motion for summary judgment) from "defendant revoked Plaintiffs' registration certificates and CPLs (because they are a unitary whole)" to its own legal theory that the Chief denied registration certificates and CPLs or instituted revocation proceedings but the denials or revocations never became final because Plaintiffs never lost their rights to own and carry in public while the appeals were

pending. [ECF No. 46], ECF p. 19-22.[1] Then the District argues, Plaintiffs lose; *ergo*, no standing.

The allegations that the District challenged (whether Plaintiffs' revocations/ denials became final, whether the registration and CPLs systems are a unitary system) are not the factual basis of the Court's jurisdictional allegations nor do the allegations raise any kind of "jurisdictional defense" which raises standing issues. *See Stewart v. Martin*, 2025 U.S. App. LEXIS 16576, at *18 (6th Cir. July 7, 2025). An example of a jurisdictional defense would be whether plaintiff's claim against a sovereign falls under an exception to sovereign immunity under the Foreign Sovereign Immunities Act of 1976 (FSIA), 28 U.S.C. §§ 1330, 1602-1611. *Republic of Hungary v. Simon*, 145 S. Ct. 480, 488 (2025).

Here the only allegations the District challenged relate to the merits issue of whether the District's revocation proceedings revoked/ denied Plaintiffs'

---

[1] The Court may consider, on a motion to dismiss, public records and filings before an administrative agency without converting the motion to a motion for summary judgment. *Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017); *EEOC v. St. Francis Xavier Parochial Sch.*, 326 U.S. App. D.C. 67, 117 F.3d 621, 624 (1997). The Court may also consider "[p]ublic records . . . when referred to in the complaint and integral to the plaintiff's claim." *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 273 (D.C. Cir. 2018). The Second Amended Complaint refers to and quotes filings in the parties' revocation proceedings, and the claims depend on the Chief's and Trial Board's decisions. To the extent any of Plaintiffs' allegations contradict the administrative record, the record controls. *Owens*, 897 F.3d at 272–73.

registration certificates and CPLs so that they could not own a handgun or carry it concealed in public.

The District may believe that Plaintiffs will not prevail on this legal theory on the merits, but that is a merits question, not a standing question, and the District framed its arguments as standing arguments. Thus, the District asks this Court to invert the order of analysis established by Circuit precedent. *Tanner-Brown*, 105 F.4th at 445 (*quoting Parker v. District of Columbia*, 478 F.3d 370, 376-77 (D.C. Cir. 2007)).

Yet simply because a plaintiff may not (or even will not) ultimately succeed in persuading a court as to the validity of their legal theories or their factual allegations does not mean they lacks standing. Were it otherwise, "every losing claim would be dismissed for want of standing." *Dun v. Transamerica Premier Life Ins. Co.*, 442 F. Supp. 3d 229, 235-236 D.D.C. 2020)(*quoting Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1092 (10th Cir. 2006) (*en banc*) *aff'm without a discussion of standing by Dun v. Transamerica Premier Life Ins. Co.*, 858 F. App'x 379, 379 (D.C. Cir. 2021)(unpublished).

The District did not brief for the Court the applicable standard for evaluating a motion to dismiss for lack of standing, and neither did the District brief for the Court how the applicable standard should be applied to the portions of the District's Renewed Motion to Dismiss contending that certain Plaintiffs lacked

standing for their declaratory relief and injunctive relief claims. In fact, the District asked the Court to apply the wrong standard.

Therefore, allowing Plaintiffs to provide supplemental authority on the applicable standard and how it should be applied will benefit the Court. *Tanner-Brown v. Haaland*, 105 F.4th at 445.

This Notice of Supplemental Authority raises important Constitutional arguments, and the arguments are evident from the face of the Amended Complaint. *Tanner-Brown*, 105 F.4th at 444.

Moreover, applying the correct standard will streamline resolution of the District's motion because applying the correct standard is a more elegant solution to the Motion than deciding the merits of the claims which the District contends lack standing, which is "doctrinally unsound" and requires an "extensive analysis" of the merits of the administrative record. *Tanner-Brown*, 105 F.4th at 445. The Court does not have jurisdiction to decide the merits before deciding the standing issue. *Id.*

The District did not separately argue that Plaintiffs' lack standing for their claims for money damages based on the District's applying its unconstitutional statutes to them in revocation proceedings based on unconstitutional statutes. But the same rule applies. The Court should assume this legal theory will prevail when deciding the District's standing arguments. Plaintiffs pled injuries in fact for these

claims: "humiliation, emotional distress, physical harm, loss of earnings, general damages, and legal expenses and loss of the constitutional right to carry handguns in self-defense outside the home that resulted from denial of their CPLs, ¶ 247 and from denial or revocation of their registration certificates, ¶ 269, as well as nominal damages, Relief Requested, C, D, & E, ECF pp. 67-68. The emotional distress and pocketbook damages (expending money for legal fees in defending their Second Amendment rights in unconstitutional revocation proceedings) are classic injuries redressable in § 1983 claims. *Carey v. Piphus*, 435 U.S. 247, 263-64, 98 S. Ct. 1042, 1052 (1978)(adopting common law compensation principles for damage necessary to compensate plaintiffs for actual harm); *Doe v. District of Columbia*, 697 F.2d 1115, 1123 (1983)(applying *Carey* compensation principle to Eighth Amendment claim); *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 18, 22, 26 (D.D.C. 2019)(listing redressable injury in fact damages under Second Amendment § 1983 claim including compensatory damages for physical suffering, for mental anguish, and for reasonable and necessary expenses like loss of earnings or attorney's fees).

To the extent that the Court construes the District's merits arguments as arguments in support of its Rule 12(b)(6) motion Plaintiffs state a claim even assuming arguendo some of the Plaintiffs' revocations did not became final because subjecting Plaintiffs to revocation proceedings based on statutes and

regulations that violate the Second Amendment even if the Plaintiffs did prevail. *Smith v. District of Columbia*, 387 F. Supp. 3d at 30, 26 (plaintiffs stated § 1983 claims by alleging that the District instituted civil forfeiture proceedings based on the District's seizure and forfeiture of vehicles used to convey firearms and criminal prosecutions based on unconstitutional statutes which violated the Second Amendment, even if the Plaintiffs did prevail); *see Sherwin Manor Nursing Ctr. v. McAuliffe*, 37 F.3d 1216, 1219 (7th Cir. 1994) (licensed Jewish-owned long-term nursing care facility stated a substantive First Amendment claim based on anti-Semitism when state employees fabricated report to initiate license revocation for religious reasons even though plaintiff did not lose license or any business).

| | |
|---|---|
| Respectfully submitted,<br><br>/s/ William Claiborne<br>WILLIAM CLAIBORNE<br>D.C. Bar # 446579<br><br><br>717 D Street, N.W<br>Suite 300<br>Washington, DC 20006<br>Phone 202/824-0700<br>Email claibornelaw@gmail.com<br><br><br>Counsel for Sanu Millard, Kenneth Hope, and Keontae Steptoe on behalf | Respectfully submitted,<br><br>/s/ Alan Alexander Beck<br> ALAN ALEXANDER BECK<br>D.C. Bar # HI001<br><br><br>2692 Harcourt Drive<br>San Diego, CA 92123<br><br><br>Email alan.alexander.beck@gmail.com<br><br><br>Counsel for Sanu Millard, Kenneth Hope, and Keontae Steptoe on behalf of |

| | |
|---|---|
| of themselves and the putative class members | themselves and the putative class members |